UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIE MARIE GENUA,

      Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

      Defendant.
_____

18-CV-00423-MJR
DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 20)

Plaintiff Julie Genua ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 15) is granted, and defendant's motion (Dkt. No. 18) is denied.

---

[1] The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND[2]

On March 31, 2014, plaintiff protectively filed an application for SSI, alleging disability beginning June 28, 2011, due to anxiety, depression, bipolar disorder, borderline personality disorder, post-traumatic stress disorder, and obsessive-compulsive disorder. Her claim was denied at the initial level. (Tr. 76-86, 92-95, 182-86, 252)[3] On December 22, 2016, Administrative Law Judge ("ALJ") Stephen Cordovani held a hearing at which plaintiff appeared with counsel and testified. (Tr. 26-74, 96) An impartial vocational expert also testified. (*Id.*)

The ALJ issued an unfavorable decision on April 8, 2017. (Tr. 14-25) The Appeals Council subsequently denied review (Tr. 7-10), and this timely action followed. (Dkt. No. 1)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which summarized at length in their moving papers.

[3] Citations to "Tr.___" refer to the pages of the administrative transcript (manually filed).

2

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first,

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 19) At step two, the ALJ found that plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, and bipolar disorder. (Tr. 19) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20) The ALJ then assessed a residual functional capacity ("RFC") of a full range of work, but with the following non-exertional limitations: she could understand, remember, and carry out simple and routine instructions and tasks; have no supervisory duties, no independent decision-making, and no strict production quotas; have minimal changes in the work routine and process, frequent interaction with supervisors, no or incidental interaction with coworkers and the general public, and no team or tandem work with coworkers. (Tr. 21-23) Proceeding to step four, the ALJ found that plaintiff could perform other work that exists in substantial numbers in the national economy. (Tr. 23-24) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 24)

IV.  *Plaintiff's Challenges*

Plaintiff requests that this matter be remanded for further administrative proceedings because the record did not contain a State-agency psychologist or psychiatrist's opinion that evaluated plaintiff's mental functioning based on new Paragraph B criteria that became effective during the pendency of this case. (*See* Dkt. No. 15-1 ("Pl. Mem.") at 16-20)

As stated earlier, an ALJ must make a finding on whether an individual's impairments meet or medically equal the severity of a listed impairment in 20 C.F.R. part 404 Subpart. P, Appendix 1 (the "Listings"). *See* 20 C.F.R. §§ 925, 926. If the ALJ finds the impairments meet or are medically equivalent to a listing, the individual is disabled and the evaluation ends; however, if the ALJ finds otherwise, the evaluation continues to the next step. *See id.*

When a claimant allegedly suffers mental impairments, the ALJ is required to use the Psychiatric Review Technique or "special technique" at steps two and three of the evaluation to determine whether the claimant has any severe mental impairments and whether the impairments meet or equal the Listings. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. Part 404, Subpt. P, Appx. 1; 20 C.F.R. § 404.1520a. The special technique requires the ALJ to assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The SSA recently made changes to the Listings used to evaluate claims involving mental disorders. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg.

66138-01 (Sept. 26, 2016)). These rules went into effect on January 17, 2017. *See id.*; *see also Mattioli v. Berryhill*, No. 17-CV-1409, 2018 WL 5669163, at *3 (D. Conn. Nov. 1, 2018); 20 C.F.R. § Pt. 404, Subpt. P, Appx. 1 (effective Jan. 17, 2017). District courts are expected "to apply those rules that were in effect at the time the ALJ issued [the] decision." *Mattioli*, 2018 WL 5669163, at *3 (quoting *Cobb v. Berryhill*, No. 17-CV-00106, 2017 WL 6492078, at *4 n.2 (N.D. Tex. Nov. 29,2017), *report and recommendation adopted*, No. 17-CV-106, 2017 WL 6493237 (N.D.Tex. Dec. 15, 2017) (citing 81 Fed. Reg. 66138-01)). Evaluation of the severity of mental impairments, or the "Paragraph B criteria," is among those changes. *See* 20 C.F.R. § 416.920a.

Prior to January 17, 2017, the limitations in four broad functional areas were: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § Pt. 404, Subpt. P, Appx. 1 (2016).

After January 17, 2017, the four functional areas were amended to: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). In assessing the functional areas, an ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the degree of the limitations is "none" or "mild," an ALJ will find the generally find the impairments non-severe; however, if they are severe an ALJ must determine if the disorder meets or equals a listing. 20 C.F.R. § 416.920a(d)(1-2).

The ALJ's decision was issued on on April 28, 2017, after the new regulations took effect, and the parties do not dispute that he considered the revised criteria in applying

8

the so-called special technique. (Tr. 14; Pl. Mem. 18, Dkt. No. 18-1 ("Def. Mem.") 11) The ALJ found that plaintiff had: (1) mild limitations understanding, remembering, or applying information; (2) mild limitations interacting with others; (3) moderate limitations concentrating, persisting, or maintaining pace; and (4) mild limitations adapting or managing oneself. (Tr. 20) In making this finding, the ALJ relied upon two consultative examinations from 2012 and 2014 by Susan Santarpia, Ph.D.[4] (Tr. 20) He then concluded that plaintiff's impairments did not meet Listing 12.04 or 12.06. (Id.)

Defendant argues that the ALJ's decision should be upheld because a State-agency medical opinion is not required for an ALJ to make a step-three finding pursuant to Social Security Ruling ("SSR") 17-2p, and, alternatively, a State-agency medical opinion contained in the record supported the ALJ's step-three finding. (Def. Mem. 12-19)

The Commissioner is correct that he is only required to have a qualified psychiatrist or psychologist complete the medical portion of the case review and any applicable RFC assessment at the initial determination level. See 42 U.S.C. § 421(h)(1) ("An initial determination . . . shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure . . . in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment[.]"). Moreover, SSR 17-2p provides that "[t]o assist in evaluating this issue, adjudicators at the hearings level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and

---

[4] The record also contains two state agency review opinions from 2014 which were afforded great weight by the ALJ, but were not referenced in the Listings analysis. (Tr. 23, 76, 636)

9

severity of the impairment(s)." SSR 17-2p, 2017 WL 3928306, at *3. (emphasis added). The Court agrees with the Commissioner's reading of the Ruling that it is discretionary, and not mandatory, for an ALJ to seek evidence from a medical expert at step three.

What is problematic, however, is that the Court cannot discern from the ALJ's decision whether his application of the special technique under the new criteria was supported by substantial evidence. In his Listings analysis, the ALJ cited to two opinions from consulting physician Dr. Santarpia. In 2012, Dr. Santarpia assessed that plaintiff could "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. Mild impairment is demonstrated in performing complex tasks independently. Difficulties are caused by distractibility." (Tr. 594) Dr. Santarpia's 2014 opinion was unchanged with the exception of finding "moderate impairment" with "performing complex tasks independently." (Tr. 634)

While Dr. Santarpia did not evaluate plaintiff's performance under the four functional domains,[5] the ALJ relied upon these opinions in assessing plaintiff's ability to understand, remember, and apply information, and with regard to concentrating, persisting, or maintaining pace. (Tr. 20, 592-95, 631-35) There was no opinion evaluating plaintiff's performance in interacting with others and adapting or managing oneself; rather, the ALJ relied upon plaintiff's testimony and her treatment history in finding mild limitations in these areas. (*Id.*) Thus, there was no medical opinion that evaluated, or that was relevant to plaintiff's performance in two of the four new functional domains. The Court

---

[5] At the time of the consultative evaluations, the four functional domains were activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

10

therefore cannot determine whether the ALJ arbitrarily substituted his analysis of the medical record for that of a trained physician. See *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . .") (internal quotation omitted).

As cited by plaintiff, *Mattioli v. Berryhill*, No. 17-CV-1409, 2018 WL 5669163, at *4 (D. Conn. Nov. 1, 2018) presents a similar factual scenario. In a June 19, 2017 decision, the ALJ applied the revised Paragraph B criteria, but relied upon the plaintiff's treatment notes and a 2011 opinion by the plaintiff's treating psychiatrist in making the step three determination. Further, the opinion he relied upon evaluated the plaintiff's limitations under two of the four new functional areas, and did not address understanding, remembering, or applying information or adapting or managing oneself. 2018 WL 5669163 at *4. The district court found that the ALJ impermissibly engaged in interpreting the underlying medical evidence based on lay opinion:

> In this case, no medical professional, either a treating source or a state agency medical or psychological consultant, reviewed the medical evidence and gave an opinion as to how it corresponded to the *new criteria*. In addition, no state agency medical or psychological consultant reviewed the *entire record* and offered an opinion with respect to Plaintiff's mental limitations under either set of functional areas.

*Id.* (emphasis in original)

Defendant attempts to distinguish *Mattiola* from the instant case because the present record contains an opinion by a State-agency physician, or psychological consultant ("PC"). (Def. Mem. 17; Tr. 83-86) He further argues that the PC considered and addressed plaintiff's functional limitations, including those relevant to the new Paragraph B criteria, even though the opinion was rendered at the initial determination

11

level in 2014.[6] (*Id.*) This argument might be colorable if it were clear that the ALJ considered and applied the opinion at step three, but that is not the case. Instead, the opinion was cited in passing as part of the ALJ's ultimate RFC determination. (Tr. 23) Again, it is not apparent to the Court that the ALJ considered or relied upon the PC opinion in the step-three analysis. *See Black v. Berryhill*, No. 17-CV-557, 2018 WL 4501063, at *6 (W.D.N.Y. Sept. 20, 2018) (noting that a reviewing court may not rely on *post hoc* rationalizations for agency action).

It is therefore unclear under these circumstances whether the ALJ relied upon his lay opinion in evaluating the Paragraph B criteria, which was revised during the pendency of plaintiff's claim. Because the Court cannot meaningfully review the ALJ's decision in this regard, the matter is remanded. *See, e.g., Mattioli*, 2018 WL 5669163, at *4 ("[42 U.S.C. § 421(h)(1)] appears to contemplate that, although technically a qualified psychiatrist or psychologist is not required to review the evidence and offer an opinion at the ALJ hearing level, the ALJ is undertaking that determination with the benefit of a record containing an opinion from such a professional applying the same criteria the ALJ will be applying. Because of the particular timing of this case – that the regulations changed during the pendency of the matter – that did not happen here.")

---

[6] At the initial level, the PC completed an RFC assessment, indicating that plaintiff had no limitations in understanding and remembering; no significant limitations in carrying out very short and simple instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, making simple work-related decisions, being aware of normal hazards and taking appropriate precautions, and raveling to unfamiliar places or using public transportation; and moderate limitations in carrying out detailed instructions, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. (Tr. 76-86)

Plaintiff also appears to challenge the ALJ's evaluation of plaintiff's subjective complaints. (Pl. Mem. 20-25) In finding remand necessary for the reasons stated above, the Court need not reach this remaining argument. Because the ALJ may need to further develop the record, he may also re-assess plaintiff's credibility in the subsequent proceedings.

## CONCLUSION

For the foregoing reasons, plaintiff Julie Genua's motion for judgment on the pleadings (Dkt. No. 15) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 18) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: November 1, 2019
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

Copyright © Munksgaard. All rights reserved. No reuse without permission.